**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RAUDEL GARCIA RODRIGUEZ,**<br><br>***Petitioner*,**<br>**v.**<br><br>**TODD BLANCHE,**<br>Acting U.S. Attorney General;<br>**MARKWAYNE MULLIN,**<br>Secretary, Department of Homeland Security; **and**<br>**MARY DE ANDA-YBARRA,**<br>U.S. ICE Field Office Director,<br><br>***Respondents*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-26-CV-01769-DCG** |

**ORDER TO SHOW CAUSE**

For the following reasons, the Court **ORDERS** Respondents to show cause why the Court should not grant Raudel Garcia Rodriguez's "Petition for Writ of Habeas Corpus."[1]

## I. Background

Immigration officials are presently detaining Petitioner at the El Paso Service Processing Center.[2] As far as the Petition reveals, the Government hasn't yet issued a final removal order against Petitioner.[3] The Government thus appears to be detaining Petitioner under the authority

---

[1] *See generally* Pet., ECF No. 1.

[2] *Id.* at 1.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the internal pagination of the cited document.

[3] *See id.* at 4.

of 8 U.S.C. § 1225(b)(2)(A)[4]—which, under the Fifth Circuit's prevailing interpretation of that statute, mandates detention without a bond hearing for most aliens who are not yet subject to final removal orders.[5] Petitioner has therefore filed a Petition for Writ of Habeas Corpus challenging the constitutionality of his detention without a bond hearing.[6]

## II. Discussion

### A. Applicable Legal Standards

Under 28 U.S.C. § 2241, a detainee may challenge his confinement as unlawful by filing a habeas corpus petition.[7] The Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") specify what the Court must do after receiving such a petition. Although the Habeas Rules govern petitions filed under 28 U.S.C. § 2254, they also apply to petitions filed pursuant to § 2241.[8]

---

[4] *See* 8 U.S.C. § 1225(b)(2)(A) (providing (subject to certain exceptions) that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained*" for removal proceedings (emphasis added)).

[5] *See, e.g.*, *Villatoro Weelock v. Warden*, No. 3:26-1493, 2026 WL 2083477, at *6 (W.D. La. June 17, 2026) ("Section 1225 . . . which applies before a petitioner has a final order of removal . . . 'provides for mandatory detention.'" (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026))).

[6] *See generally* Pet.

[7] *See* 28 U.S.C. § 2241(c) (requiring petitioners to show that they are "in custody in violation of the Constitution or laws or treaties of the United States"); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

[8] *See* Rules Governing Section 2254 Cases ("Habeas Rules"), Rule 1(a) ("These rules govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254"); *see also* Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)").

*See also Perez v. Hijar*, No. 22–50904, 2023 WL 4559366, at *1 (5th Cir. July 17, 2023) ("Rule 1(b) of the rules governing § 2254 cases articulates that these rules may apply to other habeas corpus petitions as well").

Habeas Rule 4 requires the Court to "examine" a petition and "dismiss" it "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to any relief."[9] If dismissal is not appropriate, the Court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted."[10] Should the petition survive prescreening, "the judge *must* order the respondent[s] to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."[11] 28 U.S.C. § 2243 requires that the response "be returned within three days" or "not exceeding twenty days."[12] However, courts have "discretionary authority" to alter the "strict time limits prescribed by § 2243."[13]

### B. The Fifth Circuit's Stay Order in *Sosnava Rodriguez* Does Not Prevent This Case From Proceeding

Before prescreening the Petition under the Habeas Rules,[14] the Court must first determine whether a recent development divests this Court of authority to take any further action in this case.

---

[9] *See* Habeas Rule 4; *see also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) ("The district court has the power under Rule 4 to examine and dismiss frivolous habeas petitions prior to any answer or other pleading by the state.").

[10] 28 U.S.C. § 2243.

[11] Habeas Rule 4; *see also* 28 U.S.C. § 2243 (requiring the district court to issue the order "forthwith"); *Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (concluding that a district court acted "forthwith" by issuing a show cause order "just twenty-one days after [the] petition was filed").

[12] 28 U.S.C. § 2243.

[13] *See, e.g.*, *Y.V.S. v. Wolf*, No. 3:20-CV-228-DCG, 2020 WL 4926545, at *1 (W.D. Tex. Aug. 21, 2020) (collecting cases) (reasoning that because Congress approved the Habeas Rules in 1976 and enacted § 2243 in 1948, the former governs the district court's authority to set response deadlines).

[14] *See supra* Section II.A.

### 1. *The Sosnava Rodriguez* Stay Order

On July 2, 2026, a three-judge panel of the Fifth Circuit ruled in *Sosnava Rodriguez v. Ortega* (and two cases consolidated with it) that "the Government may detain aliens under Section 1225(b)(2)(A) for ninety days . . . without a bond hearing"—"but no longer."[15] The panel further concluded that if the Government fails to give a § 1225(b)(2)(A) detainee a bond hearing within 90 days window, the Government must release the petitioner from detention.[16]

On July 10, 2026, however, the full Fifth Circuit vacated the panel's opinion and ordered rehearing *en banc*.[17] The case is set for oral argument on September 24, 2026.[18]

That same day, the Government asked the full Fifth Circuit to "stay . . . the district court judgments pending en banc review."[19] As will become critical below, courts consider four

---

[15] *Sosnava Rodriguez v. Ortega*, --- F.4th ----, 2026 WL 1906557, at *16 (5th Cir. July 2, 2026) [hereinafter *Sosnava Rodriguez Panel Op.*], *vacated by Sosnava Rodriguez v. Ortega*, --- F.4th ----, 2026 WL 2014647 (5th Cir. July 10, 2026) [hereinafter *Sosnava Rodriguez Reh'g Order*].

[16] *See id.* at *17.

[17] *See Sosnava Rodriguez Reh'g Order*, 2026 WL 2014647, at *1.

[18] Order Calendaring Case, *Sosnava Rodriguez v. Ortega*, No. 26-50183 (5th Cir. July 22, 2026), ECF No. 202.

[19] *See* Motion for Stay of District Court Judgments Pending Rehearing En Banc at 37, *Sosnava Rodriguez v. Ortega*, No. 26-50183 (5th Cir. July 10, 2026), ECF No. 178-1 [hereinafter *Sosnava Rodriguez* Mot. Stay].

Ordinarily, a litigant seeking to stay a judgment pending appeal must ask the district court to stay its own judgment before repairing to the court of appeals. *Compare* FED. R. APP. P. 8(a)(1) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal . . . ."), *with* FED. R. APP. P. 8(a)(2) (specifying when "[a] motion for the relief mentioned in Rule 8(a)(1) may be made to the court of appeals or to one of its judges").

In *Sosnava Rodriguez*, however, the Government argued that its motion to stay the district court's judgments was excepted from that rule. *See* Reply in Support of Motion for Stay of District Court Judgments Pending Rehearing En Banc at 10–12, *Sosnava Rodriguez v. Ortega*, No. 26-50183 (5th Cir. July 20, 2026), ECF No. 195 [hereinafter *Sosnava Rodriguez* Reply]. The Fifth Circuit evidently agreed. *See infra* note 27 and accompanying text (noting that the Fifth Circuit ultimately granted the motion, rather than denying it as procedurally improper).

factors (the "*Nken* factors,"[20] also known as the "*Hilton* factors"[21]) when deciding whether to stay a district court's judgment or order pending appeal:

(1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;"

(2) "whether the applicant will be irreparably injured absent a stay;"

(3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding;" and

(4) "where the public interest lies."[22]

The decision to grant a stay pending appeal is committed to the court's equitable discretion.[23]

Besides arguing that the *Nken* factors supported staying the *Sosnava Rodriguez* judgments,[24] the Government specifically asked the full Fifth Circuit to issue a "reasoned, published," and "precedential" order granting its stay motion.[25] The Government evidently assumed that if the Fifth Circuit issued "a precedential order staying the district courts'

---

[20] *See Nken v. Holder*, 556 U.S. 418 (2009); *see also, e.g.*, *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (using the phrase "*Nken* factors").

[21] *See Hilton v. Braunskill*, 481 U.S. 770 (1987); *see also, e.g.*, *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1056 (E.D. Cal. 2023) (observing that "[t]he *Nken* test" is "also referred to as the *Hilton* factors"); *Nken*, 556 U.S. at 425–26 (noting that *Hilton* articulates "the 'traditional' standard for a stay" pending appeal).

[22] *E.g.*, *SEC v. Barton*, 79 F.4th 573, 581 (5th Cir. 2023) (quoting *Nken*, 556 U.S. at 434).

The *Nken* factors govern motions for a stay pending appeal irrespective of whether the motion is filed in the district court or the appellate court. *See, e.g.*, *United States v. Roe*, No. 10-cv-01049, 2010 WL 3777606, at *2 (D. Colo. Sept. 20, 2010) ("Although *Nken* discusses an appellate court's stay of a district court judgment, district courts apply the same analysis in deciding whether to stay their own judgments." (citations omitted)); *see also supra* note 19.

[23] *E.g.*, *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022); *In re 1st S. Sav. Ass'n*, 820 F.2d 700, 707 (5th Cir. 1987).

[24] *See Sosnava Rodriguez* Mot. Stay at 20–37.

[25] *See, e.g.*, *Sosnava Rodriguez* Reply at 13.

judgments" in *Sosnava Rodriguez*, that would automatically stay all § 1225(b)(2)(A) litigation pending in district courts throughout the Fifth Circuit, thereby relieving the Government of the burden of litigating "thousands of habeas petitions."[26]

On July 21, 2026, the full Fifth Circuit issued an order staying the *Sosnava Rodriguez* judgments (the "Stay Order").[27] Although the Fifth Circuit designated the Stay Order as "published" as the Government requested,[28] the court didn't give the Government the "reasoned" order it hoped for.[29] The portion of the Stay Order ruling on the stay motion states—in its entirety—as follows:

> "**IT IS FURTHER ORDERED** that Appellants' opposed motion for stay of the district court judgments pending rehearing *en banc* is **GRANTED**."[30]

Beyond that, the Fifth Circuit didn't explain why it granted the stay.[31] In particular, the court didn't explicitly analyze why the *Nken* factors supported the relief the Government sought.[32]

More importantly for present purposes, the Stay Order also doesn't explicitly say what effect it has on "the thousands of [other] habeas petitions" pending in district courts throughout

---

[26] *See Sosnava Rodriguez* Mot. Stay at 13 (emphasis omitted); *see also infra* note 34 and accompanying text.

[27] *See Sosnava Rodriguez v. Ortega*, --- F.4th ----, 2026 WL 2104747, at *1 (5th Cir. July 21, 2026) [hereinafter *Sosnava Rodriguez Stay Order*].

[28] *Compare Sosnava Rodriguez* Reply at 13, *with Sosnava Rodriguez Stay Order*, 2026 WL 2104747, at *1.

[29] *See supra* note 25 and accompanying text.

[30] *See Sosnava Rodriguez Stay Order*, 2026 WL 2104747, at *1.

[31] *See id.*

[32] *See id.*; *see also supra* note 22 and accompanying text.

the Fifth Circuit.[33] In at least one other § 1225(b)(2)(A) case (*Martinez Jarquin v. Warden*), however, the Government claimed that "all district judges" within the Fifth Circuit "are precluded from granting habeas petitions asserting due process claims pending the en banc decision in *Sosnava Rodriguez*" as a result of the Stay Order.[34] This Court must therefore analyze whether the Stay Order prohibits the Court from proceeding any further in this case.

**2. The Stay Order Does Not Stay These Proceedings By Its Own Terms**

It's at least clear that the Stay Order does not *by its own terms* stay all district court proceedings in all § 1225(b)(2)(A) cases pending within the Fifth Circuit's boundaries. An order staying the "district court *judgments*" in *Sosnava Rodriguez* does not stay pending *proceedings* in cases like this one, where the Court hasn't yet issued a judgment—and, indeed, where the Government hasn't even responded to the Petition yet.[35]

**3. The Stay Order's Status as Binding Precedent**

Thus, the only way the Fifth Circuit's order staying the *judgments* in *Sosnava Rodriguez* could stay these pending *proceedings* is if the Stay Order constitutes a binding precedent

---

[33] *Compare Sosnava Rodriguez* Mot. Stay at 13 (emphasis omitted), *with Sosnava Rodriguez Stay Order*, 2026 WL 2104747, at *1.

[34] *See* Emergency Motion for Reconsideration at 4, *Martinez Jarquin v. Warden*, No. 5:26-CV-01208 (S.D. Tex. July 24, 2026), ECF No. 15 [hereinafter *Martinez Jarquin* Mot.].

*But see Martinez Jarquin v. Warden*, No. 5:26-CV-01208, 2026 WL 2198932, at *2–3 (S.D. Tex. July 28, 2026) (ultimately rejecting that argument).

[35] *See Sosnava Rodriguez Stay Order*, 2026 WL 2104747, at *1 (emphasis added).

More fundamentally, the Court questions whether a federal court of appeals has appellate jurisdiction to stay a case that no party has yet appealed. *Compare, e.g.*, *United States v. Chisum*, 156 F. App'x 75, 76 (10th Cir. 2005) ("Appellate jurisdiction over the underlying appeal is a prerequisite for this court's consideration of a stay pending appeal."), *with, e.g.*, *In re Deepwater Horizon*, 785 F.3d 1003, 1009 (5th Cir. 2015) ("Timely notice of appeal is a mandatory prerequisite for this Court's appellate jurisdiction.").

forbidding district courts from taking any further action in any pending § 1225(b)(2)(A) case until the *en banc* court issues its ruling. That's the position that the Court understands the Government to have taken in the *Martinez Jarquin* case mentioned above.[36]

As the Court explains below, the Government's argument is only partly correct. Under Supreme Court caselaw, a higher court's interim stay order (like the Stay Order here) is binding to the extent that it must "inform" district courts' rulings in legally, factually, and procedurally analogous cases. That remains true even where—as here—the interim order doesn't explain why the higher court granted the stay. So, if—counterfactually—this Court had already issued a judgment in this case, and Respondents moved to stay that judgment pending appeal, the Stay Order's unstated but necessary conclusions would "inform" this Court's ruling on that motion.

But even though the Stay Order might inform the Court's decision whether to stay its eventual *judgment* in this case, it doesn't require district courts throughout the Fifth Circuit to stay *proceedings* in all pending § 1225(b)(2)(A) cases. That's because the legal standard that governs when to stay a *judgment* pending an appeal in the *same* case differs from the standard governing whether to stay district court *proceedings* while awaiting a ruling in a *different* case. Given the limited overlap between those two legal tests, the Stay Order's implicit conclusion that the Government satisfied the former standard only minimally "informs" how this Court should apply the latter doctrinal framework. And, for the reasons outlined below, staying these proceedings pending *Sosnava Rodriguez*'s resolution would be improper under the latter test.

---

[36] *See Martinez Jarquin* Mot. at 1, 3 ("Respondents . . . respectfully request that the Court reconsider its July 23, 2026 order granting Petitioner's Petition for Writ of Habeas Corpus. . . . The Court is bound by the *en banc* Fifth Circuit's precedential order staying the district court judgments pending rehearing *en banc*. . . . Accordingly, this Court should stay proceedings in this case pending the Fifth Circuit's *en banc* decision on the merits in *Sosnava Rodriguez* . . . ." (citations omitted)).

### a) A Higher Court's Interim Orders Must "Inform" a Lower Court's Interim Rulings

Federal judges have vigorously debated whether interim orders (like the Stay Order here) can ever have binding, precedential effect in other cases—and, if so, what that means as a practical matter.[37] As far as this Court is aware, the Supreme Court's recent opinion in *Trump v. Boyle* supplies the most definitive guidance on that question.[38]

---

[37] *Contrast Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 379, 381 (4th Cir. 2026) (en banc) (Richardson, J., concurring in the judgment) (concluding that "interim orders can control the outcome of other cases," even when they don't "tell us why" the court granted interim relief), *with id.* at 405 (Wynn, J., writing separately) (reaching the opposite conclusion that the effect of "an interim order . . . without reasoning . . . extends no further than its result").

[38] *See* 145 S. Ct. 2653, 2654 (2025).

The Fifth Circuit's opinion in *ODonnell v. Salgado* also provides some guidance insofar as it holds that a "published [Fifth Circuit] opinion granting [a] stay" pending appeal—"like all published opinions"—"binds the district courts in this circuit." 913 F.3d 479, 482 (5th Cir. 2019). In *ODonnell*, however, the Fifth Circuit issued a lengthy stay opinion after taking "the unusual step of hearing oral argument" on the stay motion. *See id.* at 481; *see also ODonnell v. Goodhart*, 900 F.3d 220, 221–28 (5th Cir. 2018) (the stay opinion). *ODonnell* thus provides little guidance regarding what district courts should do where (as here) the Fifth Circuit issues a published stay opinion that contains no explicit reasoning. *See supra* notes 29–32 and accompanying text.

The Fifth Circuit's opinion in *U.S. Navy Seals 1–26 v. Biden* doesn't provide much guidance on that question either. *See* 72 F.4th 666 (5th Cir. 2023). In the lead opinion there, *see id.* at 675 n.9, Judge Duncan favorably cited the Eleventh Circuit's opinion in *Democratic Executive Committee of Florida v. National Republican Senatorial Committee*, which states in relevant part that "the necessarily tentative and preliminary nature of a stay[] opinion precludes the opinion from having an effect outside the case." 950 F.3d 790, 795 (11th Cir. 2020). Judge Duncan specifically cited *Democratic Executive Committee* for the proposition that a stay opinion "cannot spawn binding legal consequences regarding the merits of the case." *See* 72 F.4th at 675 n.9 (quoting *Democratic Exec. Comm.*, 950 F.3d at 795). Those quotations tend to suggest that interim stay orders *don't* have precedential effect.

Elsewhere in that opinion, however, Judge Duncan used language suggesting that published stay orders *do* have precedential effect. *See* 72 F.4th at 675 ("[W]e decline the Navy's invitation to vacate our motion panel's published opinion denying a stay pending appeal. *Judicial precedents* are presumptively correct and valuable to the legal community as a whole." (emphasis added) (citation modified)). Thus, the Court doesn't interpret Judge Duncan's opinion in *Navy Seals* to take a definitive position on that question.

In any event, no other Judge on the panel joined that portion of Judge Duncan's opinion. *See id.* at 676 (Graves, J., concurring in part and dissenting in part) (dissenting from Judge Duncan's decision not to vacate a prior stay opinion in the same case because Judge Graves believed that the stay opinion "ha[d]

About a month before deciding *Boyle*, the Supreme Court granted a stay pending appeal in a case called *Trump v. Wilcox*.[39] The Supreme Court then granted a stay in *Boyle* based exclusively on its prior ruling in *Wilcox*.[40] The *Boyle* Court explained that although interim orders (like the stay order in *Wilcox*) "are not conclusive as to the merits," "they inform how a court should exercise its equitable discretion in like cases."[41] Perceiving no material distinction between *Wilcox* and *Boyle*, the Supreme Court concluded that its ruling in the former "squarely controlled" the outcome in the latter.[42]

---

precedential effect beyond its preliminary decision on the stay"); *id.* at 677–78 (Ho, J., dissenting) (dissenting from Judge Duncan's opinion on the merits without addressing the prior stay opinion).

The Court thus concludes that *Boyle*—which post-dated *Navy Seals* by roughly two years—supplies the governing precedent on this issue.

[39] *See Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025).

[40] *See* 145 S. Ct. at 2654 (citing *Wilcox*, 145 S. Ct. at 1415).

[41] *See id.*

[42] *See id.*

*Boyle* thus suggests[43] that if a higher court has previously granted a stay pending appeal in an earlier case, the higher court's stay order should "inform" how a lower court "should exercise its equitable discretion" in a different but analogous case.[44]

---

[43] *Boyle* implicated a slightly different question: the treatment that the *Supreme Court* should give to *its own* prior stay opinions when faced with a motion to stay in a different but factually similar case. *See id.* In other words, the question in *Boyle* was about *horizontal* stare decisis—"the respect that [the Supreme] Court owes to its own precedents." *See, e.g.*, *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring in part).

Nevertheless, the undersigned Judge understands *Boyle*'s pronouncement that "interim orders . . . inform how a court should exercise its equitable discretion in like cases" to also govern whether a *higher* court's interim stay order dictates whether a *lower* court should grant a stay in a different but similar case. *See* 145 S. Ct. at 2654; *see also Öztürk v. Hyde*, 155 F.4th 187, 211 n.4 (2d Cir. 2025) (Nathan, J., concurring in the denial of rehearing *en banc*) (concluding that "when [a higher court] issues a preliminary legal holding in an interim order, lower courts are bound by that holding as a matter of vertical precedent").

The undersigned Judge also recognizes the circularity of citing an interim stay order as a judicial precedent governing whether interim stay orders can be judicial precedents. *See Boyle*, 145 S. Ct. at 2654; *cf. Am. Fed'n*, 172 F.4th at 379 (Richardson, J., concurring in the judgment) (acknowledging that "*Boyle* is itself a short, unsigned interim order"). *Boyle* represents the position of a majority of the current Supreme Court, however, *see* 145 S. Ct. at 2654, so this Court will treat it as controlling.

[44] *See* 145 S. Ct. at 2654; *see also supra* note 23 and accompanying text (noting that the decision to grant a stay pending appeal is committed to the court's equitable discretion).

In his partial concurrence in *National Institutes of Health v. American Public Health Association*, Justice Gorsuch performed a more thorough analysis of this issue than the full Court conducted in *Boyle*. *See* 145 S. Ct. 2658, 2663–64 (2025) (Gorsuch, J., concurring in part and dissenting in part). Justice Gorsuch opined that any time a higher court "issues a decision" on a "request[] for interim relief," that decision "constitutes a precedent" that "binds lower courts as a matter of vertical *stare decisis*." *Id.* Although Justice Gorsuch acknowledged *Boyle*'s holding that "decisions regarding interim relief are not necessarily 'conclusive as to the merits' because further litigation may follow," *see id.* at 2663 (quoting *Boyle*, 145 S. Ct. at 2654), he nonetheless concluded that the *reasoning* underlying interim orders "carries precedential weight in future cases." *Id.* (citation modified).

However, no Justice other than Justice Kavanaugh joined Justice Gorsuch's opinion. *See id.* Thus, this Court isn't necessarily bound to adopt Justice Gorsuch's conclusion that a higher court's interim orders bind lower courts "regardless of [their] procedural posture." *See id.*; *see also Am. Fed'n*, 172 F.4th at 405 n.5 (Wynn, J., writing separately) ("I am not convinced . . . that a separate opinion by two Justices in [an] interim decision can make clear that [higher courts'] interim orders have precedential effect . . . .").

Even if this Court adopted Justice Gorsuch's position, it's not self-evident how Justice Gorsuch's pronouncement that an interim order's "reasoning . . . carries precedential weight in future cases" applies where—as here—the interim order contains no explicit reasoning. *See Nat'l Insts. of Health*, 145 S. Ct. at

It's relatively easy to apply that rule when the interim order explains why the court granted the stay.[45] *Wilcox*, for example, contained several paragraphs furnishing the Supreme Court's reasons for granting a stay.[46] Thus, when the Supreme Court confronted a similar stay application in *Boyle*, it could explain why *Wilcox*'s logic dictated the same result.[47]

But it's less clear how a higher court's stay order should "inform" a lower court's ruling where—as here—the higher court didn't explain why it granted the stay.[48] Without knowing what factual and legal considerations the higher court deemed relevant or dispositive, a lower court may have difficulty assessing whether those same factual and legal considerations are present in the case before it—and, by extension, whether the earlier case compels the same

---

2663 (Gorsuch, J., concurring in part and dissenting in part) (citation modified); *see also supra* notes 29–32 and accompanying text. *But see infra* notes 48–59 analyzing that question.

[45] *Cf. Am. Fed'n*, 172 F.4th at 380 (Richardson, J., concurring in the judgment) ("In most cases, applying this rule of precedential force will be straightforward. We consider whether an earlier . . . interim order is 'like' the case at hand. In doing so, we ask whether *meaningful* differences exist between the interim order and the case before us.").

[46] *See* 145 S. Ct. at 1415 ("The application for stay . . . is granted. Because the Constitution vests the executive power in the President, he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by our precedents. The stay reflects our judgment that the Government is likely to show that [members of the agencies at issue here] exercise considerable executive power. . . . The stay also reflects our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty. A stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." (citation modified)).

[47] *See* 145 S. Ct. at 2654 ("The stay we granted in *Wilcox* reflected 'our judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty. The same is true on the facts presented here . . . . [This] case does not otherwise differ from *Wilcox* in any pertinent respect." (quoting *Wilcox*, 145 S. Ct. at 1415)).

[48] *See supra* notes 29–32 and accompanying text; *see also Am. Fed'n*, 172 F.4th at 379 (Richardson, J., concurring in the judgment) (acknowledging that "the terse nature of some interim orders" may make that task "more challenging").

outcome. For exactly that reason, some judges have concluded that unexplained stay orders *can't* "inform" lower courts' rulings in subsequent cases[49]—and, thus, don't have any binding effect beyond the specific case that the higher court stayed.[50]

Respectfully, however, this Court is more persuaded by judges who've concluded that even an unexplained stay order conveys at least *some* information by necessary implication.[51] For example, whenever a higher court stays a judgment pending appeal, "it has necessarily decided that the *Nken* factors support a stay in that circumstance."[52] Thus, under *Boyle*, if a district court subsequently encounters a motion to stay a judgment pending appeal in a similar case, the higher court's unspoken but necessary conclusions must "inform" the district court's application of those same factors.[53]

So, to illustrate, when a higher court grants a stay pending appeal, "it has necessarily decided" that the movant satisfied *Nken*'s requirement to show a likelihood of success on the merits.[54] Thus, if a litigant asks a district court to stay its own judgment in a later case that

---

[49] *See Am. Fed'n*, 172 F.4th at 405 (Wynn, J., writing separately) ("In *Boyle* . . . the Court pointed to a previous interim order's conclusion about the government's risk of harm. Here, we have no such binding 'reflections' regarding the Court's judgment. We are left, instead, to be as 'informed' as the outcome of the order can make us." (citation modified)).

[50] *See id.* ("Of course, an interim order has legal effect—it binds us as to its result. But to say that an interim order has effect is not to say that it has reasoning. And without reasoning, its reach extends no further than its result.").

[51] *See id.* at 380 (Richardson, J., concurring in the judgment) (opining that "even terse orders can provide significant information").

[52] *See id.*; *see also supra* note 22 and accompanying text.

[53] *See Boyle*, 145 S. Ct. at 2654; *see also Am. Fed'n*, 172 F.4th at 380 (Richardson, J., concurring in the judgment) (opining that "[a] lower court considering similar questions cannot ignore the necessary import" of a higher court's interim stay order in an analogous case).

[54] *See Am. Fed'n*, 172 F.4th at 380–81 (Richardson, J., concurring in the judgment); *see also supra* note 22 and accompanying text.

presents the exact same legal issue and materially indistinguishable facts, the district court can't reach the contrary conclusion that the movant is *not* likely to prevail on that issue.[55] Put differently, the lower court can't apply the *Nken* factors in a way that would contradict the necessary implications of the higher court's stay ruling.[56]

But that doesn't necessarily mean that a lower court must grant a stay pending appeal in every case that resembles a case that a higher court previously stayed. If the case before the lower court is factually, legally, or procedurally distinguishable from the case before the higher court, the lower court could potentially reach a different result without contradicting any of the earlier stay order's necessary implications.[57] Absent any such material distinctions, however, the earlier case "squarely control[s]" how the district court should apply the *Nken* factors.[58]

---

[55] *See Am. Fed'n*, 172 F.4th at 380–81 (Richardson, J., concurring in the judgment).

[56] *See id.* at 381 ("The Supreme Court's interim order tells us the required outcome of this appeal—we must vacate the preliminary injunction. But the order doesn't tell us why. This leaves us with two lawful options: (1) simply point to the Supreme Court's decision and dispose of the case on precedent; or (2) independently analyze a ground for reaching the result the Court reached. But a third option is off the table—we may not defy the Supreme Court by upholding the injunction.").

[57] *See id.* at 375 (Wilkinson, J., concurring in the judgment) ("[W]e apply interim orders just as we would any of the Court's precedents in the normal course of business. Under any theory of *stare decisis*, the precedential weight of a [higher court's] decision is inextricably linked to the factual and legal similarity between the past and present. The operative question—interim order or not—is whether a precedent sits too far afield of the case at hand so as to be distinguishable." (citation omitted)).

*See also id.* at 377 ("This conclusion does not . . . raise the specter of an absolute rule prohibiting us from ever interpreting [a higher court's] interim orders. As with any issue of precedential weight, the consideration for interim decisions is simply one of balance. Balance between respecting the Court's pronouncements and crediting any *unique* circumstances of the case before us.").

*See also id.* (Richardson, J., concurring in the judgment) ("Of course, many cases feature novel legal or factual issues that require inferior courts to exercise independent judgment.").

[58] *See Boyle*, 145 S. Ct. at 2654.

So, to come full circle, if:

(1) this Court had already entered a judgment in Petitioner's favor in this case;

(2) Respondents had appealed that judgment to the Fifth Circuit; and

(3) Respondents asked this Court to stay the judgment pending that appeal;

then the *Sosnava Rodriguez* Stay Order would need to "inform" how this Court ruled on that motion. This Court couldn't apply the *Nken* factors in a way that contradicts anything that the Stay Order necessarily implies. And this Court could only deny such a stay if this case is legally, factually, or procedurally distinguishable from *Sosnava Rodriguez* in a way that affects the *Nken* analysis.[59]

**4. The Stay Order Doesn't Require the Court to Stay the Instant Proceedings**

But none of those triggering events have occurred yet. The Court hasn't yet issued a judgment, there's no pending appeal in this case, and there's no motion to stay that nonexistent judgment pending that nonexistent appeal. Thus, the question isn't whether the Court should stay a *judgment* pending an appeal in the *same* case, but rather whether the Stay Order requires this Court to stay these *proceedings* pending an appeal in a *different* case (namely, *Sosnava Rodriguez*).

[59] The Court does not now express any view on whether any such distinctions exist here.

Respondents haven't specifically filed a motion to stay the instant proceedings, which is unsurprising because:

(1) the Court hasn't yet served Respondents with the Petition and ordered them to respond to it;[60] and

(2) the Government evidently believes that the Stay Order, of its own force, relieves the Government of the burden to litigate pending § 1225(b)(2)(A) cases—without requiring the Government to file motions to stay proceedings in each individual case.[61]

Considering the issue *sua sponte*,[62] however, the Court concludes that the Stay Order doesn't require the Court to pause these proceedings.

**a) The *Landis* Standard**

The precedent governing whether a district court should stay proceedings pending the resolution of a different case is not *Nken*, but rather the Supreme Court's 1936 decision in *Landis v. North American Co.*[63] Under *Landis*, while it's not "per se impermissible" to stay proceedings

---

[60] *But see infra* Sections II.C & III (doing just that below).

[61] *See supra* notes 26, 34, and accompanying text.

[62] *See, e.g.*, *McDonald v. Union Nat'l Life Ins. Co.*, 307 F. Supp. 2d 831, 836 (S.D. Miss. 2004) ("A district court has the general discretionary power to stay proceedings before it *sua sponte* . . . ." (citation modified)).

[63] *See* 299 U.S. 248, 254–55 (1936).

*See also, e.g.*, *Fox Corp. v. Arroyo Rodriguez*, No. 4:25-cv-4650, 2026 WL 1734870, at *2 (S.D. Tex. June 16, 2026) ("*Nken* is about whether to stay final judgment in a case pending appeal, not whether to stay one case pending another case's disposition."); *Cupat v. Palantir Techs., Inc.*, No. 1:22-cv-02384, 2023 WL 2585298, at *1 (D. Colo. Mar. 21, 2023) ("[The *Nken* factors] are inapplicable when a party seeks a stay pending resolution of an issue in a separate action. In that instance, the factors set forth in *Landis v. North American Company*—rather than the *Nken* . . . factors—apply." (citations omitted)); *Lal v. Cap. One Fin. Corp.*, No. 16-cv-06674, 2017 WL 282895, at *2 (N.D. Cal. Jan. 23, 2017) ("*Landis* sets forth the standard applicable here, where a party seeks to stay a district court proceeding pending the resolution of another action. The [*Nken/*]*Hilton* standard, in contrast, applies where a party seeks to stay enforcement of a judgment or order pending an appeal of that same judgment or order in the same case." (citations omitted)); *Kuang v. U.S. Dep't of Def.*, No. 18-cv-03698, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019) ("[T]he *Nken* test is applicable when there is a request to stay a district court's *judgment or*

in one case until another case is over,[64] "[s]taying one case during the pendency of another is unusual."[65] "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[66] "And the movant's[67] burden is especially high 'if there is even a fair possibility that the stay for which he prays will work damage to some[one] else.'"[68] "In that event, the movant 'must make out a clear case'" that letting the litigation proceed would cause "hardship or inequity."[69] "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" that justifies delaying the opposing litigant's day in court.[70]

---

*order* pending an appeal of the same case, while *Landis* applies to the decision to stay *proceedings* . . . ." (citation modified)).

[64] *See In re Beebe*, 56 F.3d 1384, 1995 WL 337666, at *3 (5th Cir. May 15, 1995) (per curiam).

[65] *In re Desoto County*, No. 26-60020, 2026 WL 147775, at *2 (5th Cir. Jan. 20, 2026) (per curiam).

[66] *E.g.*, *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *Landis*, 299 U.S. at 255).

[67] As noted, Respondents haven't formally "moved" for a stay of the instant proceedings. *See supra* notes 60–61 and accompanying text. Thus, when applying the *Landis* standard *sua sponte* below, *see infra* Section II.B.4.c, the Court will evaluate whether Respondents *could have* satisfied its burden *if* it filed such a motion.

[68] *Desoto County*, 2026 WL 147775, at *2 (quoting *Landis*, 299 U.S. at 255).

[69] *Id.* (quoting *Landis*, 299 U.S. at 255).

*See also, e.g.*, *Wedgeworth*, 706 F.2d at 545 (emphasizing that a district court deciding whether to stay pending proceedings "must weigh [the] competing interests and maintain an even balance" (quoting *Landis*, 299 U.S. at 254–55)).

[70] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

*See also Desoto County*, 2026 WL 147775, at *2 ("While it is true that denial of a stay will require the [movant] to proceed to trial, the costs of trial are not extraordinary—rather, they are a basic incident of litigation.").

Before staying district court proceedings "pending the resolution of another case, the court must [also] carefully consider the time reasonably expected for resolution of the other case."[71] A stay of pending proceedings may not "be immoderate or of an indefinite duration."[72] "Thus, a stay must be 'so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.'"[73]

The same principles apply when a litigant wants a lower court to stay its proceedings until a higher court decides a case that could substantially modify the governing legal standards. As the Fifth Circuit explained in an analogous circumstance,[74] "[a]ll federal courts—whether 'supreme' or 'inferior'—are equally vested with the judicial Power of the United States."[75] "Incident to that power is the duty to say what the law is."[76] "Thus, while lower courts must follow [higher courts'] interpretations of federal law, . . . they remain fully competent to decide questions of federal law in the meantime—even when related issues are pending before [a higher

---

[71] *E.g.*, *Wedgeworth*, 706 F.2d at 545 (citation modified).

[72] *E.g.*, *id.* (citation modified).

*See also Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976) (explaining that when a court of appeals assesses whether a district court's stay of proceedings is "immoderate," it should consider "two variables—the scope of the stay, and the reasons cited for ordering it").

[73] *E.g.*, *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 257).

[74] The movant in *Desoto County* asked the district court to stay certain voting rights litigation pending the Supreme Court's forthcoming decision in a case that appeared likely to change the applicable legal standards. *See* 2026 WL 147775, at *1. That's analogous to the present situation, where the Fifth Circuit's forthcoming decision in *Sosnava Rodriguez* may affect the legal standards that govern Petitioner's procedural due process claims. *See supra* Section II.B.1.

[75] *See Desoto County*, 2026 WL 147775, at *2 (citation modified).

[76] *See id.* (citation modified).

court]."[77] As such, a district court does not "'usurp[]' [a higher court]'s role by proceeding with" litigation "while [an appeal raising similar issues] remains pending" before the higher court.[78]

#### b) Differences and Similarities Between *Landis* and *Nken*

The *Landis* considerations outlined above are very different from the *Nken* test. Most notably, none of the *Landis* considerations bear directly on the likelihood that the movant will ultimately succeed on the merits,[79] which is one of "the most important" factors in the *Nken* analysis.[80] Thus, nothing about the Fifth Circuit's implicit conclusion that the *Sosnava Rodriguez* respondents demonstrated a likelihood of success on the merits of their appeal "informs" whether this Court may, must, or should stay the instant proceedings under *Landis*.

Not only does the *Nken* standard implicate considerations that aren't relevant under *Landis*—the opposite is true too. As noted, *Landis* requires a court, "before granting a stay pending the resolution of another case," to "carefully consider the time reasonably expected for the resolution of the other case."[81] The *Nken* factors, by contrast, don't explicitly direct the court to consider how long a requested stay pending appeal will last.[82] Thus, nothing about the Stay

---

[77] *See id.* (citations omitted).

[78] *See id.*

[79] *See, e.g.*, *Kuang*, 2019 WL 1597495, at *6 ("The likelihood of success on the merits is not an independent factor under *Landis*, and therefore does not carry the same weight in this context."); *Vallejo Ent. LLC v. SBA*, No. 1:22-cv-01548, 2023 WL 3275634, at *2 (D.D.C. May 5, 2023) ("[T]he likelihood of the movant prevailing on the merits is considered for a stay pending appeal, not a stay pending resolution of independent proceedings.").

[80] *See, e.g.*, *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019); *see also supra* note 22 and accompanying text.

[81] *See, e.g.*, *Wedgeworth*, 706 F.2d at 545 (citation modified); *see also supra* notes 71–73 and accompanying text.

[82] *See supra* note 22 and accompanying text.

Order necessarily implies whether a stay of these proceedings would "be immoderate or of an indefinite duration" for the *Landis* test's purposes.[83]

The Court doesn't deny that the *Nken* and *Landis* tests "overlap" to some degree.[84] In particular, the Stay Order's unspoken conclusion that the *Sosnava Rodriguez* respondents satisfied the *Nken* factors necessarily implies that:

(1) staying the *Sosnava Rodriguez* judgments would not "substantially injure" the petitioners in those three cases; and

(2) the Government would have been "irreparably injured" unless the Fifth Circuit stayed those judgments pending appeal.[85]

Those implicit conclusions could potentially "inform" this Court's analysis of the following questions under *Landis*:

(1) whether staying the instant proceedings would "work damage to" Petitioner; and, if so,

(2) whether letting this litigation proceed would cause Respondents "hardship or inequity."[86]

The point, however, is that nothing about the Fifth Circuit's implicit application of the *Nken* factors ineluctably dictates whether this Court may, must, or should stay all proceedings in

---

[83] *See, e.g.*, *Wedgeworth*, 706 F.2d at 545 (citation modified); *see also supra* note 72 and accompanying text.

[84] *See, e.g.*, *Hollis v. Patton*, No. 2:26-cv-01658, 2026 WL 1481588, at *1 n.2 (E.D. Cal. May 27, 2026).

[85] *See, e.g.*, *Barton*, 79 F.4th at 581 (citation modified); *see also supra* note 22 and accompanying text.

[86] *See, e.g.*, *Desoto County*, 2026 WL 147775, at *2 (quoting *Landis*, 299 U.S. at 255); *see also supra* notes 68–70 and accompanying text.

*But see infra* Section II.B.4.c (explaining why, at least in this particular case, the Stay Order provides no definitive guidance on those issues).

this case until the *en banc* court rules. While the Stay Order may inform this Court's balancing of the relative harms to both sides,[87] it doesn't inescapably dictate the ultimate result this Court must reach when applying a different legal standard with different elements in a different procedural posture.

**c) The Court's Application of *Landis***

Applying the *Landis* test in light of what limited guidance the Stay Order provides, this Court readily concludes that this isn't one of the "rare circumstances" where one litigant should "stand aside while a litigant in another [case] settles the rule of law that will define the rights of both."[88]

First, there's much more than "a fair possibility" that staying these proceedings would "work damage to" Petitioner.[89] The Fifth Circuit won't hear oral argument in the case until late September,[90] and probably won't issue its ruling for a few months after that. Forcing Petitioner to languish in detention for months while this Court awaits the Fifth Circuit's ruling would

---

[87] *See supra* notes 85–86 and accompanying text.

[88] *See, e.g.*, *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 255).

[89] *See, e.g.*, *id.* (quoting *Landis*, 299 U.S. at 255).

[90] *See supra* note 18 and accompanying text.

obviously cause Petitioner significant harm.[91] A stay of that length would therefore "be immoderate" under the circumstances.[92]

The Ninth Circuit's opinion in *Yong v. INS* underscores the point.[93] There—as here—the question was whether it was proper for a district court to stay proceedings in a pending immigration habeas case until an appellate court resolved an appeal a different case raising similar issues.[94] Citing the "special considerations" that "habeas proceedings implicate"—namely, the detainee's interest in a prompt ruling on the legality of his ongoing confinement[95]—the Ninth Circuit said no.[96] The Ninth Circuit "acknowledge[d] that the district court" in *Yong*

---

[91] *See Milan v. Warden*, No. 4:26-2001, 2026 WL 2100493, at *1 (S.D. Tex. July 21, 2026) ("The respondents [ask the court to defer its ruling on the petition until the Fifth Circuit decides] *Sosnava Rodriguez* . . . . Because the rehearing will take an unknown amount of time, and because the petitioner's injury from continued detention is ongoing, the respondents' motion for deferral will be denied." (citations omitted)).

*See also infra* notes 93–99 and accompanying text.

[92] *See, e.g.*, *Wedgeworth*, 706 F.2d at 545 (citation modified).

[93] *See* 208 F.3d 1116 (9th Cir. 2000).

[94] *See id.* at 1117 ("Because the issues raised in Yong's petition were to be considered by this court in *Ma v. Reno*, the district court stayed proceedings in Yong's case pending resolution of the appeal in *Ma*. Yong contends the district court abused its discretion when it ordered the stay." (citation modified)).

[95] *See id.* at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case . . . . The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action . . . . Special solicitude is required because the writ is intended to be a swift and imperative remedy in all cases of illegal restraint or confinement. Accordingly, the statute itself directs courts to give petitions for habeas corpus special, preferential consideration to insure expeditious hearing and determination. . . . The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if trial courts do not act within a reasonable time." (citation modified)).

[96] *See id.* at 1117 (agreeing that "the district court abused its discretion when it ordered the stay").

*See also id.* at 1120 ("[W]e have never authorized . . . an indefinite, potentially lengthy stay in a habeas case. Nor do we now.").

"was in an unenviable position"—"[i]t was faced with a number of [immigration habeas] petitions in an evolving area of law and knew that, however it ruled, it might be required to revisit its decision if its reasoning did not comport with" the Ninth Circuit's forthcoming decision.[97] But waiting to take any action until the Ninth Circuit issued that ruling "placed a significant burden on [the petitioner] by delaying, potentially for years, any progress on his petition."[98] The possibility that the district court might ultimately need to revisit the case did not "justify the indefinite, and potentially lengthy, stay" that the district court imposed.[99] All of that is equally true here.

None of the foregoing contradicts the Stay Order's necessary implication that a stay pending appeal wouldn't "substantially injure" the three petitioners in *Sosnava Rodriguez*.[100] Unlike Petitioner here, none of the three petitioners in *Sosnava Rodriguez* were still in detention when the Fifth Circuit stayed the judgments in their favor.[101] Thus, the only way the Stay Order will harm the *Sosnava Rodriguez* petitioners is if the Government opts to redetain them while the *en banc* proceedings are pending.[102] The harm Petitioner faces, by contrast, is certain: if the

---

[97] *See id.* at 1120.

[98] *See id.*

[99] *See id.* at 1120–21.

[100] *See supra* note 85 and accompanying text.

[101] *See Sosnava Rodriguez Panel Op.*, 2026 WL 1906557, at *1 ("Each alien was released from custody . . . ."); *id.* at *17 ("If still detained pre-removal, today's opinion would require [the *Sosnava Rodriguez* petitioners'] release unless they had been provided a bond hearing that denied release. . . . [W]e see no reason to have any of the three detained again to serve additional time . . . .").

[102] *See* Petitioners-Appellees' Opposition to Respondents-Appellants' Motion for Stay of District Court Judgment Pending Rehearing *En Banc* at 9, *Sosnava Rodriguez v. Ortega*, No. 26-50183 (5th Cir. July 17, 2026), ECF No. 192-1 (emphasizing "the irreparable injury that *re-detention* would cause" the *Sosnava Rodriguez* petitioners (emphasis added)).

Court stays these proceedings, he will remain in detention for the entire time that *Sosnava Rodriguez* remains pending.[103] Thus, proceeding with this case wouldn't necessarily contradict any of the Stay Order's implicit premises.

Because staying these proceedings would "work damage to" Petitioner, Respondents face an "especially high" burden: they "must make out a clear case" that proceeding with this litigation would cause them "hardship or inequity."[104] In its briefing in *Sosnava Rodriguez*, the Government claimed that it faced two forms of "irreparable harm" in the absence of a stay pending appeal:

(1) injury to its sovereign interest in enforcing the nation's immigration laws;[105] and

(2) the "crushing burden" of having to litigate "thousands of habeas petitions."[106]

Because the Fifth Circuit didn't explain why it granted the Government's stay motion,[107] this Court can't infer anything about whether the Fifth Circuit deemed either, both, or neither of those alleged harms dispositive for the purposes of *Nken*'s "irreparable injury" prong.[108] As

---

[103] Unless, of course, the Government issues a final removal order against Petitioner and successfully removes him from the United States.

[104] *See, e.g.*, *Desoto County*, 2026 WL 147775, at *2 (quoting *Landis*, 299 U.S. at 255).

[105] *See, e.g.*, *Sosnava Rodriguez* Mot. Stay at 33 ("The district courts' judgments have irreparably harmed the Government . . . by . . . restraining the Executive's ability to enforce federal law in an area over which the political branches have plenary authority. That is irreparable harm: Any time a sovereign is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation modified)).

[106] *See, e.g.*, *id.* at 35.

[107] *See supra* notes 29–32 and accompanying text.

[108] *See supra* note 22 and accompanying text.

such, the Fifth Circuit's implicit conclusion that the Government satisfied that *Nken* factor can't "inform" how this Court analyzes *Landis*'s "hardship"/"inequity" element.[109] The Court must therefore perform that analysis from scratch.

Beginning with the argument that letting this case proceed would infringe the Government's sovereign interests, the Court agrees with *Yong*'s conclusion that the harm to Petitioner from delaying a ruling on his Petition outweighs whatever encroachment on the Government's sovereignty may result from letting this case proceed.[110] As for the additional effort the Government will have to expend responding to the Petition here, that's simply irrelevant under the *Landis* test. Again, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."[111]

Thus, after "weigh[ing the] competing interests" as *Landis* requires,[112] the Court concludes there is no basis to stay these proceedings while awaiting the *en banc* ruling in *Sosnava Rodriguez*.[113] And nothing in the Stay Order compels the contrary conclusion.

---

[109] *Cf. Guerra Estrada v. De Anda Ybarra*, No. 3:26-CV-01897, 2026 WL 2168090, at *2 (W.D. Tex. July 28, 2026) (Cardone, J.) ("Because the [S]tay [O]rder does not explain why the competing equities in the three consolidated cases in *Sosnava Rodriguez* warranted a stay, the Court is unable to discern how the balance of the equities there informs the equities present here.").

[110] *See* 208 F.3d at 1121 ("[W]e reject the notion that the stay protects the affairs of the INS against interference. Cases involving the legality of [immigration] detention[] . . . continue to be decided with increasing frequency. Put simply, the stay does not advance the INS's interests in any significant way, but it causes Yong substantial prejudice." (citations omitted)).

[111] *See Lockyer*, 398 F.3d at 1112; *see also supra* note 70 and accompanying text.

[112] *See, e.g.*, *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 254–55).

[113] *Cf. Guerra Estrada*, 2026 WL 2168090, at *2 (concluding—albeit on slightly different grounds—that the Stay Order doesn't prohibit district courts from proceeding with § 1225(b)(2)(A) litigation); *Martinez Jarquin*, 2026 WL 2198932, at *2–3 (similar); *Scott Camacho v. DHS*, No. 3:26-CV-01717, 2026 WL 2137156, at *2–3 (W.D. Tex. July 24, 2026) (similar).

To be absolutely clear, this Court has no desire to defy the Fifth Circuit. If the Fifth Circuit intended the Stay Order to halt proceedings in every single pending habeas case involving a § 1225(b)(2)(A) detainee, the Fifth Circuit can correct this Court's misunderstanding. The undersigned Judge will faithfully abide by the Fifth Circuit's rulings whatever they may be. Based on the information, caselaw, and guidance presently at the Court's disposal, however, the Court doesn't read the Stay Order that broadly.

### C. The Court Orders Respondents to Respond to the Petition

Having determined that the Stay Order does not require the Court to stay the instant proceedings, the Court has prescreened the Petition in accordance with the Habeas Rules.[114] The Court's examination indicates that this case is not subject to summary dismissal. The Court will therefore order Respondents to show cause why the Court should not grant the Petition. If necessary, the Court will order a hearing or additional briefing after reviewing the parties' filings.

## III. Conclusion

For the foregoing reasons, the Court **ORDERS** Respondents to file a response to the "Petition for Writ of Habeas Corpus" (ECF No. 1) by no later than **August 6, 2026**. This response must identify each factual allegation contained in the Petition that Respondents dispute. Petitioner may file a reply within three days after Respondents serve their response.[115] If necessary, the Court will order a hearing or additional briefing upon review of the pleadings.

---

[114] *See supra* Section II.A.

[115] *See* FED. R. CIV. P. 6(a)(1)(C) ("When the period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

The Court further **ORDERS** the parties to inform the Court if (1) an order of removal is entered against Petitioner while this case is pending; and (2) if the order of removal becomes final.[116]

The Court **DIRECTS** the Clerk of Court to **SUBSTITUTE** Secretary Mullin in Former Secretary Noem's place as a Respondent in the above-captioned case.

The Court likewise **DIRECTS** the Clerk of Court to **SUBSTITUTE** Acting U.S. Attorney General Todd Blanche in Former Attorney General Pamela Bondi's place as a named Respondent in this case.[117]

The District Clerk shall **SERVE** copies of the "Petition for Writ of Habeas Corpus" (ECF No. 1) and this Order upon Respondents **and** the United States Attorney in El Paso, Texas.[118]

---

[116] *See* 8 C.F.R. § 1241.1 (explaining how "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final").

[117] The Court assumes that Petitioner was suing both Former Secretary Noem and Former Attorney General Bondi in their official capacities. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . . The court may order substitution at any time . . . .").

[118] *See* Habeas Rule 4 ("[T]he clerk must serve a copy of the petition and any order on the respondent[s] and on the attorney general or other appropriate officer of the state involved.").

Finally, the Clerk of Court **SHALL MAIL** this Order to:

Raudel Garcia Rodriguez
El Paso Service Processing Center
8915 Montana Avenue
El Paso, TX 79925

Just in case the Government relocates Petitioner to another facility while this mailing is in transit, the Clerk of Court **SHALL ALSO MAIL** this Order to:

Raudel Garcia Rodriguez
ERO El Paso Camp East Montana
6920 Digital Road
El Paso, TX 79936

**So ORDERED and SIGNED this 3rd day of August 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**